## HARTMAN FURNITURE & CARPET CO. v. MILWAUKEE COUNTY, WIS., et al.

District Court, E. D. Wisconsin.

Aug. 6, 1929.

Gold & McCann, of Milwaukee, Wis., for plaintiff.

Daniel W. Sullivan, of Milwaukee, Wis., for defendants.

GEIGER, District Judge.

The plaintiff sues to recover state income taxes paid under protest.

In Wisconsin, prior to 1927, income taxes were levied upon the basis of the calendar year—they were assessed and paid each year on the income of the previous year. In 1927 the Legislature changed the scheme by introducing the "averaging" method. It prescribes:

"71.10 Computation of taxes and preparation of assessment and tax rolls, office audits, certification of taxes and refunds.

"(1) (a) The tax commission or the assessor of incomes shall determine the taxable income by averaging the net income or loss reported by the taxpayer on his current return with the net incomes or losses for the two previous years, except that the taxable income assessed in the year 1928 shall be the average of the net incomes or losses for the years 1926 and 1927 or for the corresponding two fiscal years."

Pending the introduction and working out of the new scheme, the Legislature at a special session in 1928 (Laws 1928, 1st Sp. Sess., c. 4) added to the foregoing this clause: "Giving the net income or loss of 1926 two-thirds weight and the net income or loss of 1927 one-third weight."

The tax in question was assessed and paid in 1928 and comprehended plaintiff's 1926 and '27 incomes subjected to the formula last above noted. In 1926 the income was $118,129, in 1927, $3,644; and was multiplied by two, the latter added, and the sum divided by three, viz.:

| | |
|---|---|
| 1926 Income | $118,129 |
| 1926 Income | 118,129 |
| 1927 Income | 3,644 |
| Total | $239,902 |
| Average Net Income 1926—⅔ weight 1927—⅓ weight | $ 79,967 |

The plaintiff's tax, computed upon this "average," was $5,398.52. It paid under protest, and now avers that the statute is discriminatory and deprives it of property without due process of law.

The statute is criticized, and illustrative examples of its possible operation are given, thus:

"Section 71.10, as amended by Chapter 4 of the Laws of 1928, says, in effect, that taxpayers who have a larger income in 1926 than in 1927, shall pay a tax in 1928 on a greater assessment than taxpayers whose income in 1926 was less than, or equal to, their 1927 income, although the total income of both such classes of taxpayers for the taxing period might have been exactly the same.

"Assume that A's income for 1926 was 12X, and for 1927 was nothing. His assessment in 1928 would be on an income of 12X plus 12X plus nothing, divided by 3, or 8X.

"Assume that B had the same income for the years 1926 and 1927 as A, but earned 6X in 1926 and 6X in 1927. His assessment for 1928 for income tax purposes would be 6X plus 6X, plus 6X, divided by 3, or 6X.

"Again, assume B had the same income for the years 1926 and 1927, as A, but earned nothing in 1926, and 12X in 1927. B's assessment in 1928 for income tax purposes would be, nothing, plus 12X, divided by 3X, or 4X." (Plaintiff's brief.)

No contention arises except upon the 1928 amendatory clause, for upon its application to supposedly equal aggregate incomes for two years is based the contention of discriminatory inequality of assessment and taxation. That is to say, it is conceded, first, that the "averaging" method for assessment and for taxation of incomes is within legislative competency; and, secondly, that the scheme may properly comprehend incomes received prior to the enactment of the law establishing the method. I believe that the defendant and the state tax commission in its consideration of this very matter, not only plausibly, but quite conclusively, account for the terms of the law and the amendment in their limitations, first, to incomes earned subsequently to 1925; secondly, for the double weight to be given to the incomes of 1926; and, lastly, in the purpose to have the law and is averaging formula go into immediate operation. It is quite clear, before amendment, if, in order to introduce the new scheme, a two-year averaging period were first applied, the introduction of a three-year basis which comprehended the identical incomes already brought within the two-year method would unquestionably result in either overassessment or underassessment of incomes bearing the relation, on comparison, which is pressed in this case. The illustrations given by the plaintiff, being limited, as they are, to two years, undoubtedly show what might be

called a mathematically necessary result. Thus, if incomes of A and B were

| | 1926 | 1927 |
|---|---|---|
| A | ..............X | ..................Y |
| B | ..............Y | ..................X |

—then, if it be assumed that X is greater than Y, it must follow in applying the formula prescribed by the amendment that, although A's X and Y and B's Y and X are equal,

$$\frac{\text{A's 2X plus A's Y}}{3} \text{ cannot equal } \frac{\text{B's 2Y plus B's X}}{3}$$

That is true, because A's excess for the first year is multiplied, while B's excess for the second is not.

But, conceding the mathematical and and actual inequality of the "taxable" income thus assessed, the conclusion either that it is discriminatory or that the inequality is permanent or ultimate must of necessity rest upon this *partial* application of the three-year averaging scheme. The tests, when the Federal Constitution is invoked, are stated in broad terms, which concede great latitude to state taxing authority, and, in view of the subject-matter, include the idea that not every inequality is to be treated as unjustly or flagrantly discriminatory. It may be true that, if a result proves to be palpable or flagrant in producing discrimination, then economic expediency furnishes no justification. So if, in the present case, the law in its three-year averaging method, *when applied,* not merely on its first assessment, but in its operation through successive periods, had the inherent vice of producing inequality of assessment upon comparison of hypothetical income (which are assumed to be entirely probable), it ought not to stand. When, however, it appears, as I think it does, that this inequality is compensated, or, as counsel state it, "flattened out," upon applying the averaging method to *three* distinctive years, it seems difficult to sustain the proposition that there was no legislative discretion to start the scheme as the amendment proposes. The tabulations of the defendant which take the hypothetical cases suggested by the plaintiff, and, as it seems to me, with entire propriety, carry them through three or more succeeding years upon further permissible assumptions, demonstrate that, although the plaintiff's larger income for 1926, when given double weight, produced an inequality on the 1928 assessment, treating it as an *assessment* on aggregate incomes for

two years, *divided by three,* yet the larger income of its rival in 1927 was counted in the later application of the three-year method, when the plaintiff's larger income for 1926 dropped out of the computation.

As further illustrative of the thought, it will hardly be claimed that the Legislature in 1928—recognizing the difficulties arising upon the unamended law—was precluded from formally enacting that the three-year averaging method be started as follows:

That the tax commission in *1928* assess 1926 incomes at two-thirds; 1927 incomes at one-third; that in *1929* it assess 1928 at one-third; that in *1930* it average the incomes for 1927, 1928, and 1929; and that it proceed in like manner each year thereafter by averaging the income of the current with those of the two preceding years.

If we now assume that A and B in *1926* had incomes of 2X and X, and in *1927* incomes of X and 2X respectively; that in *1928, 1929,* and *1930* their incomes were equal, then applying what may be called the "piecemeal" method just suggested, it is obvious that on their assumed comparative incomes for 1926, 1927, there would be the same inequality of separate assessment as there is of respective incomes; that in 1929 the assessments on their 1928 incomes would be equal. But in 1930, when the first three-year average is introduced, their assessments would be unequal, although the aggregate assessed incomes for *four* years would be equal.

I believe that little dispute can arise respecting the mathematical analogies presented by the computations which may be made upon variant assumptions. In the illustration last given, it is assumed that the Legislature in its discretion was content to leave a portion of incomes for the first three years unassessed; and clearly the application of the method resulted in the inclusion of B's income of 1927 in the first application of three-year averaging, but at a time when A's larger income of 1926 was no longer available. But the former was included after having been once assessed at one-third, with the result that it received for assessing purposes the identical treatment accorded to A's income. Whatever criticism may arise upon only partial assessment, or over unequal partial assessments in successive years, the power of the Legislature cannot, in my judgment, be assailed. In none of the supposed cases has the assessment dealt with incomes for any year, except as they in fact, in whole or in part, arose.

When, therefore, it appears that, upon application of these variant methods, an ultimate equality of treatment is worked out, it strikes me as a complete answer to the charge that inequality which appears upon the partial working out of the method must be regarded as discriminatory. And it may be true that the inequality upon a partial working out might become permanent if, as suggested, one of the taxpayers whose income is being compared with another ceases earning an income, dies, or if the law be repealed. I am aware that debate has been aroused respecting the applicability of the averaging system once it appears that in any of the years to be averaged no income was earned; but this would seem to be directed to the scope of the method, the degree of its applicability, and not its constitutional validity as a method of assessment.

It is my judgment that, if the law is to be tested out upon such assumptions as the parties here make, the mere provision for giving double weight to the 1926 income upon an assessment made in 1928 cannot alone break down the assessment, because the law contemplates and works out equality upon subsequent inclusion of three distinct years in later assessments. The fact that inequality which is initially produced upon equal aggregate incomes of two years must persist until a later period, when it is bound to be eliminated—as shown in the computations—in other words, the fact that equality is *deferred*, cannot establish either discrimination nor denial of equality of legal protection.

Upon these informal considerations, I conclude that the plaintiff's motion for judgment on the pleadings should be denied; and an order may be entered accordingly.